# Exhibit A

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
CALENDAR: D
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY**
**STATE OF ILLINOIS**

---

GERALD POPEK,

                Plaintiff,

v.

Smith & Nephew, Inc. and Neubauer-
Perkins, Inc.

                Defendant.

---

Case Number:

JURY DEMAND

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, GERALD POPEK, by and through his attorney, PETER J. FLOWERS of MEYERS & FLOWERS, L.L.C. complaining against Defendant SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC. and allege:

### COMMON ALLEGATIONS

1.    GERALD POPEK was implanted with a Smith & Nephew Anthology™ Hip System (hereinafter referred to as "ANTHOLOGY") in the State of Illinois.

2.    GERALD POPEK's ANTHOLOGY was removed from his hip in the State of Illinois.

3.    At all relevant times, Smith & Nephew was registered as a Delaware Corporation.

4.    At all relevant times, Smith & Nephew was duly registered and/or licensed to do business in the State of Illinois.

5.    Smith & Nephew's registered agent in Illinois is CT Corporation System located at 208 South LaSalle Street, Suite 814, City of Chicago, County of Cook, State of Illinois.

6.    Neubauer-Perkins, Inc., is located at 3100 Dundee Road, Suite 710, City of Northbrook, County of Cook, State of Illinois.

1

7.      At all relevant times, Neubauer-Perkins, Inc., has been the exclusive sales agent and distributor for Smith & Nephew's orthopedic medical devices in Illinois.

8.      Neubauer-Perkins, Inc., earns a monetary commission on all Smith & Nephew products sold in Illinois from Smith & Nephew.

9.      This products liability lawsuit seeks compensatory damages on behalf of GERALD POPEK, who was implanted with an artificial hip replacement system known as the ANTHOLOGY that the Defendants, SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC., designed, manufactured, marketed, sold and distributed.

10.     At all relevant times, Smith & Nephew and Neubauer-Perkins, Inc. has been the exclusive sales agent and distributor for the ANTHOLOGY in Illinois.

11.     The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

12.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 2 of 14

2

13.     The ANTHOLOGY hip implant design is more prone to component fracture when implanted into a human being than hip devices manufactured by other companies.

14.     The ANTHOLOGY and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

15.     Before February 22, 2011, GERALD POPEK began medical treatment for right hip arthritis with Scott Sporer, M.D.

16.     Before February 22, 2011, Scott Sporer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, through his experience and training in the practice of medicine, indicated GERALD POPEK met the criteria for a total hip replacement on his right hip.

17.     On or about February 22, 2011, Scott Sporer, M.D., implanted the Smith & Nephew ANTHOLOGY into the right hip of GERALD POPEK in the State of Illinois.

18.     At all relevant times and before the implantation of the ANTHOLOGY in the PLAINTIFF, SMITH & NEPHEW and Neubauer-Perkins, Inc. knew that the ANTHOLOGY was defective and harmful to consumers.

19.     At all relevant times and before the implantation of the ANTHOLOGY in the PLAINTIFF, SMITH & NEPHEW and NEUBAUER-PERKINS, INC. had regular and frequent communications from surgeons who had implanted the ANTHOLOGY, including PLAINTIFF's surgeon, regarding failures and complications of the ANTHOLOGY.

20.     On or about April 24, 2013, GERALD POPEK learned that his ANTHOLOGY failed and needed to be revised with another hip prosthesis.

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 3 of 14

3

21.     On or about April 24, 2013, GERALD POPEK learned that his ANTHOLOGY had prematurely failed.

22.     On or about April 30, 2013, Scott Sporer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the ANTHOLOGY implant from GERALD POPEK and replaced it with another hip prosthesis in the State of Illinois.

## COUNT I – STRICT PRODUCT LIABILITY AGAINST SMITH & NEPHEW

23.     GERALD POPEK incorporates by reference paragraphs 1 through 22 as if fully set forth herein.

24.     SMITH & NEPHEW had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the ANTHOLOGY that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

25.     SMITH & NEPHEW did in fact sell, distribute, supply, and/or promote the ANTHOLOGY to GERALD POPEK and his implanting physician.

26.     SMITH & NEPHEW expected the ANTHOLOGY it was selling, distributing, supplying, manufacturing, and/or promoting to reach, and it did in fact reach, implanting physicians and consumers in the state of Illinois, including Plaintiff and his implanting physicians, without substantial change in the condition.

27.     At the time the ANTHOLOGY left the possession of SMITH & NEPHEW and the time ANTHOLOGY entered the stream of commerce, the ANTHOLOGY was in an unreasonably dangerous and defective condition. These defects include but are not limited to the following:

(a)     The ANTHOLOGY was not reasonably safe as intended to be used;

(b)     The ANTHOLOGY had an inadequate design for the purposes of hip replacement;

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 4 of 14

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 5 of 14

(c)     The ANTHOLOGY contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The ANTHOLOGY's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

(e)     The ANTHOLOGY's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The ANTHOLOGY failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g)     The ANTHOLOGY was insufficiently tested; and

(h)     The warning to PLAINTIFF and PLAINTIFF's implanting physicians about the dangers the ANTHOLOGY posed to consumers including PLAINTIFF were inadequate. The inadequacy of SMITH & NEPHEW's warnings include, but are not limited to, the following:

i.     Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the ANTHOLOGY, subjecting PLAINTIFF to risks which exceeded the benefits of the ANTHOLOGY;

ii.     Contained misleading warnings emphasizing the efficacy of the ANTHOLOGY while downplaying the risks associated with it, thereby making use of the ANTHOLOGY more dangerous than the ordinary consumer would expect;

iii.     Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with

5

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 6 of 14

the ANTHOLOGY;

    iv.  Did not disclose that it was inadequately tested;

    v.  Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the ANTHOLOGY; and

    vi.  Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

28.    GERALD POPEK used the ANTHOLOGY for its intended purpose, i.e. hip replacement.

29.    GERALD POPEK could not have discovered any defect in the ANTHOLOGY through the exercise of due care.

30.    SMITH & NEPHEW as designer, manufacturer, marketer, and distributor of medical devices are held to the level of knowledge of an expert in their field.

31.    GERALD POPEK and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, or distributor: SMITH & NEPHEW.

32.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, GERALD POPEK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GERALD POPEK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GERALD POPEK prays for judgment against Defendant, SMITH & NEPHEW, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT II – NEGLIGENCE AGAINST SMITH & NEPHEW

33.     Plaintiffs incorporate by reference paragraphs 1 through 32 as if fully set forth

herein.

34.     At all times relevant, it was the duty of SMITH & NEPHEW to exercise due care

in designing, testing, manufacturing, distributing, marketing, promoting, and selling of the

ANTHOLOGY such that it would be reasonably safe for its intended use.

35.     SMITH & NEPHEW's negligence in the designing, testing, manufacturing,

distributing, marketing, promoting, and selling of the ANTHOLOGY.

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 7 of 14

    a.  ANTHOLOGY was negligently designed and manufactured, creating increased metal corrosion;

    b.  SMITH & NEPHEW's surgical protocol which, among other things, should provide a surgeon who possesses the requisite degree surgical skill the information necessary for proper use of the device. Even after a proper review of all ANTHOLOGY surgical technique literature, other SMITH & NEPHEW literature, and receiving proper training during residency programs, a surgeon of standard competence and experience still lacks the requisite information necessary for safe and effective use of the ANTHOLOGY;

    c.  SMITH & NEPHEW committed manufacturing errors, including but not limited to size tolerances out of specification and not within industry acceptable standards;

    d.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the ANTHOLOGY, negligently misrepresented material facts regarding the ANTHOLOGY's safety, efficacy, and fitness for human use by claiming the ANTHOLOGY was fit for its intended purpose when, in fact, it was not;

    e.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the ANTHOLOGY, negligently misrepresented material facts regarding the ANTHOLOGY's safety, efficacy, and fitness for human use by

7

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 8 of 14

claiming the ANTHOLOGY had been adequately and reliably tested when, in fact, it was not;

f.   SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the ANTHOLOGY, negligently misrepresented material facts regarding the ANTHOLOGY's safety, efficacy, and fitness for human use by claiming the ANTHOLOGY was safe and effective and was appropriate for use by human beings when, in fact, it was not;

g.   SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the ANTHOLOGY, negligently misrepresented material facts regarding the ANTHOLOGY's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the ANTHOLOGY was comparable to that of other hip replacement systems, when in fact it was not; and

h.   SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the ANTHOLOGY, negligently misrepresented material facts regarding the ANTHOLOGY's safety, efficacy, and fitness for human use by claiming the ANTHOLOGY had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

36.   SMITH & NEPHEW knew or had reason to know that GERALD POPEK, as a member of the general public for whose use the ANTHOLOGY was placed into interstate commerce, would be likely to use the ANTHOLOGY in a manner described in this Complaint.

37.   SMITH & NEPHEW knew or reasonably should have known of the danger associated with the manner and circumstances of GERALD POPEK's foreseeable use of the ANTHOLOGY, which danger would not be obvious to the general public.

38.   As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, GERALD POPEK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for

medical care in the past and in the future; furthermore, GERALD POPEK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GERALD POPEK prays for judgment against defendant SMITH & NEPHEW, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

### COUNT III – BREACH OF WARRANTY AGAINST SMITH & NEPHEW

39.    Plaintiffs incorporate by reference paragraphs 1 through 38 as if fully set forth herein.

40.    GERALD POPEK currently is not in possession of any document relating to representations, warnings, and/or communications made by defendants in this action. GERALD POPEK reserves the right to present evidence in support of the claim which is not presently in his possession, but which will be discovered in the ordinary course of litigation. Such evidence may include, but is not necessarily limited to: Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with GERALD POPEK's device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from SMITH & NEPHEW in this action, including SMITH & NEPHEW's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and GERALD POPEK. Upon information, knowledge and belief, GERALD POPEK alleges the documents, instruments and/or evidence stated above are in the possession of SMITH & NEPHEW.

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 9 of 14

41.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the ANTHOLOGY, it knew that the hip device was intended for human use.

42.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the ANTHOLOGY, GERALD POPEK was a foreseeable user of the device.

43.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the ANTHOLOGY, it expressly and/or impliedly warranted that the hip, including all of its component parts, was safe and merchantable for their intended use.

44.    GERALD POPEK and his implanting surgeon reasonably relied upon the representations that the ANTHOLOGY was of merchantable quality and safe for their intended uses.

45.    GERALD POPEK used the ANTHOLOGY for its intended purpose.

46.    Contrary to the express and implied warranties, at the time SMITH & NEPHEW marketed, sold and/or distributed the ANTHOLOGY, it was not of merchantable quality or safe for their intended use as described above.

47.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, GERALD POPEK was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, GERALD POPEK was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, GERALD POPEK, prays for judgment against defendant SMITH & NEPHEW, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 10 of 14

10

## COUNT IV – STRICT PRODUCT LIABILITY AGAINST NEUBAUER-PERKINS, INC.

1.  GERALD POPEK incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

2.  NEUBAUER-PERKINS, INC. had a duty to place into the stream of commerce, distribute, market, promote, and sell the ANTHOLOGY that was not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

3.  NEUBAUER-PERKINS, INC. did in fact sell, distribute, supply, deliver, and/or promote the ANTHOLOGY to GERALD POPEK and her implanting physician.

4.  At all times material and before the implantation of the ANTHOLOGY in the PLAINTIFF, NEUBAUER-PERKINS, INC. had actual knowledge of the defects in the ANTHOLOGY as alleged herein.

5.  At all times material and before the implantation of the ANTHOLOGY in the PLAINTIFF, NEUBAUER-PERKINS, INC. had regular communications with the implanting surgeons who utilized the ANTHOLOGY, including the surgeon who implanted the ANTHOLOGY in the PLAINTIFF, such that NEUBAUER-PERKINS, INC. was in a unique position to provide SMITH & NEPHEW with warnings relative to the alleged defects in the ANTHOLOGY and did in fact provide SMITH & NEPHEW with such warnings based upon complaints and comments NEUBAUER-PERKINS, INC. received from the implanting surgeons.

6.  NEUBAUER-PERKINS, INC. expected the ANTHOLOGY it was selling, delivering, and distributing to reach, and it did in fact reach, implanting physicians and consumers in the state of Illinois, including Plaintiff and her implanting physicians, without

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 11 of 14

11

substantial change in the condition.

7.     At the time the ANTHOLOGY left the possession of NEUBAUER-PERKINS, INC., and the time ANTHOLOGY entered the stream of commerce, the ANTHOLOGY was in an unreasonably dangerous and defective condition.     These defects, of which NEUBAUER-PERKINS, INC. had actual knowledge, include but are not limited to the following:

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 12 of 14

(a)     The ANTHOLOGY was not reasonably safe as intended to be used;

(b)     The ANTHOLOGY had an inadequate design for the purposes of hip replacement;

(c)     The ANTHOLOGY contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The ANTHOLOGY's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

(e)     The ANTHOLOGY's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The ANTHOLOGY failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g)     The ANTHOLOGY was insufficiently tested; and

(h)     The warning to PLAINTIFF and Plaintiff's implanting physicians about the dangers the ANTHOLOGY posed to consumers including PLAINTIFF were inadequate, including, but are not limited to, the following:

    i.   Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the ANTHOLOGY, subjecting PLAINTIFF to risks which exceeded the benefits of the

12

ANTHOLOGY;

ii. Contained misleading warnings emphasizing the efficacy of the ANTHOLOGY while downplaying the risks associated with it thereby making use of the ANTHOLOGY more dangerous than the ordinary consumer would expect;

iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the ANTHOLOGY;

iv. Did not disclose that it was inadequately tested;

v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the ANTHOLOGY; and

vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed and to give them the information necessary to avoid or mitigate those dangers.

8. GERALD POPEK used the ANTHOLOGY for its intended purpose, i.e. hip replacement.

9. GERALD POPEK could not have discovered any defect in the ANTHOLOGY through the exercise of due care.

10. NEUBAUER-PERKINS, INC., as a distributor, supplier, deliverer, and/or promoter of medical devices, is held to the level of knowledge of an expert in their field.

11. GERALD POPEK and the implanting physician did not have substantially the same knowledge as the distributor, supplier, deliverer, and/or promoter: NEUBAUER-PERKINS, INC.

12. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by NEUBAUER-PERKINS, INC., the PLAINTIFF was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 13 of 14

for medical care in the past and in the future; furthermore, GERALD POPEK was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time.

WHEREFORE, GERALD POPEK prays for judgment against defendant NEUBAUER-PERKINS, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## **JURY DEMAND**

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

MEYERS & FLOWERS, LLC.

By: _____

Peter J. Flowers
One of the Attorneys for Plaintiff

ELECTRONICALLY FILED
7/3/2014 3:22 PM
2014-L-007075
PAGE 14 of 14

Peter J. Flowers (#56079)
PJF@Meyers-Flowers.com
Meyers & Flowers, L.L.C.
3 North Second Street, Suite 300
St. Charles, IL 60174
(630) 232-6333

# Exhibit B

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - ~~Served~~ By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

☑SUMMONS     ☐ALIAS - SUMMONS     (2/18/11) CCG N001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ LAW _____ DIVISION

GERALD POPEK

                 (Name all parties)

v

SMITH & NEPHEW, INC

No. 2014-L-007075

Defendant Address:
SMITH & NEPHEW, INC
R/A CT CORPORATION
208 S. LASALLE STREET
SUITE 814
CHICAGO, IL 60604

Summons

☑SUMMONS     ☐ALIAS - SUMMONS

To each Defendant:

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____801_____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

    This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _____56079_____

Name: _____PETER JOHN FLOWERS_____

Atty. for: _____GERALD POPEK_____

Address: _____3 N. 2ND STREET, SUITE 300_____

City/State/Zip: _____ST CHARLES, IL 60174_____

Telephone: _____(630) 232-6333_____

WITNESS, Thursday, 03 July _____ 2014

/s DOROTHY BROWN
Clerk of Court

Date of service: _____,_____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
                           (Area Code)      (Facsimile Telephone Number)

/s DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION
### CASE NO.2014-L-007075

### AFFIDAVIT OF SPECIAL PROCESS SERVER

**Brae Grobarek**, being first duly sworn on oath deposes and says that he/she served process in the above mentioned cause.

That he/she served the within:

**(X )** Summons & Complaint
( ) Citation to Discover Assets
( ) Rule to Show Cause
( ) Subpoena
( ) Other:

1.    ( ) By leaving a copy with the named party, ------- personally on -------.

2.    ( ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he/she mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.

3.    **( X )** On the within party, **Smith & Nephew, Inc., c/o CT Corporation System**, by leaving a copy with **Derrick Hackett, Intake Specialist and Authorized Person** on **July 7, 2014**, and informed that person of the contents thereof.

4.    **( X )** That the sex, race, and approximate age of the person with whom he/she left the documents were as follows:

SEX: **Male**          RACE: **African American**          APPROXIMATE AGE: **24**

5.    **( X )** That the place where and the time of day when the documents were served were as follows:

PLACE: **208 South LaSalle Street, Suite 814, Chicago, IL 60604**
TIME OF DAY: **2:42 PM**

6.    ( ) That he/she was unable to serve within named party ------- located at ------- for the reason: -------

Signed and Sworn to before me
This **11th** day of **July 2014**

Brae Grobarek
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

OFFICIAL SEAL
KERRI RUSWICK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/24/17

14-06090

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

GERALD POPEK, )
       )
     Plaintiff, )
       )
     vs. )     No. _____
       )
SMITH & NEPHEW, INC. and )
NEUBAUER-PERKINS, INC. )
       )
     Defendants. )

### AFFIDAVIT OF ATTORNEY ANTHONY J. MONACO

I, Anthony J. Monaco, after being sworn and upon oath, state that if I were called to an evidentiary hearing I would competently testify to the following:

1.     I am an attorney for Defendants Smith & Nephew, Inc. and Neubauer-Perkins, Inc. in the case titled <u>Gerald Popek v. Smith & Nephew, Inc. and Neubauer-Perkins, Inc</u>.

2.     I am knowledgeable about the residency and principal place of business of Smith & Nephew, Inc., a Delaware corporation with its principal place of business in Memphis, Tennessee.

3.     I am knowledgeable about the residency and principal place of business of NPI, an Illinois Corporation with its principal place of business in Illinois.

4.     At the time of the incident complained of and at the time this Complaint at Law was filed, Plaintiff Popek was a resident and citizen of the State of Illinois.

1

5.     In the time that I have worked as an attorney in Illinois, I have been involved with numerous products liability suits such as this one.

6.     As a trial attorney for the Defendant Smith & Nephew, Inc., I have a good faith belief, based on the Plaintiff's Complaint, and my experience in handling numerous product liability actions, that the real parties in interest are in diversity, the amount in controversy exceeds the jurisdictional amount of $75,000.01 exclusive of costs and interest and removal is proper.     In fact, Plaintiff's counsel has demanded far in excess of the jurisdictional limit of $75,000.01 in which to settle this matter.

7.     I represent both of the named Defendants, Smith & Nephew, Inc. and Neubauer-Perkins, Inc., and both parties consent to removal of this action.

8.     Pursuant to 28 U.S.C. § 1746(2) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   August 6, 2014          By:     /s/ Anthony J. Monaco

Anthony J. Monaco, ARDC #6279545
Anthony N. Bartosik #6289016
Brittany L. Kaspar, ARDC #6313195
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 – fax
amonaco@smbtrials.com
abartosik@smbtrials.com
bkaspar@smbtrials.com

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| GERALD POPEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| SMITH & NEPHEW, INC. and | ) | |
| NEUBAUER-PERKINS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF WALLY PERKINS

I, Wally Perkins, declare under penalties of perjury as set forth in 28 U.S.C. 1746, that I am over the age of 18, and if called to do so, could and would testify competently to the following facts based upon my own personal knowledge:

1.    I am the President and Chief Executive Officer of Neubauer-Perkins, Inc. ("NPI"). I have been in this position since January 1994. I make this Declaration based upon my personal knowledge.

2.    NPI is a corporation organized under the laws of the State of Illinois. Its principal place of business is at 1920 N. Thoreau Drive, Suite 125, Schaumburg, IL 60173.

3.    The products identified in Plaintiff's Complaint in this matter are components of the Smith & Nephew Anthology Hip System ("the Product").

4.    The manufacturer of the Product at issue in this case is Smith & Nephew, Inc. ("S&N").

5.    NPI serves as an independent sales representative for S&N in connection with the Product in the extended Chicago, Illinois area, including the North West counties.

6.    NPI did not exercise any control over the design or manufacture of the Product.

7.    NPI played no role in the design, testing, or manufacture of the Product identified in the Complaint. NPI did not develop or publish the package inserts or marketing materials that accompanied these devices or were otherwise disseminated to health care providers.

8.    NPI also did not create, alter, revise or have any involvement in obtaining any approval of any warnings or instructions relating to any Product.

9.    In fact, the contract between NPI and S&N requires all communications and representations to customers to be consistent with S&N's written instructions and consistent with the labeling of the Product.

10.    The contract further prohibits NPI from modifying, repackaging, adulterating, misbranding, altering, or adding labels to or removing labels from the Products.

11.    NPI has strictly adhered to its obligations under its contract with S&N.

12.    NPI's role with respect to the Product is limited to disseminating information created and prepared by S&N about the device, displaying samples of the device to hospitals and/or physicians, and supplying hospitals with the pre-

ordered S&N products on the date of surgery, along with the package inserts and marketing materials accompanying the Product.

13. The pre-ordered S&N products are delivered to the hospital in sterile packaging that has been labeled, packaged, and sealed by S&N.

14. In no event does NPI or any NPI representative remove the Product from the inner sterile packaging prior to it being implanted in the patient by the patient's physician.

15. NPI does not and did not ever take title to or an ownership interest in any S&N product.

16. NPI does not make any payments to S&N, and does not receive payment from hospitals for the S&N Products.

17. Rather, the physicians and/or hospitals pay S&N for its products directly.

18. Further, NPI does not and did not offer or make any warranties on any S&N product and has never made any representation or statement or provided any express or implied warranties to any physician, or to any member of the public, including the Plaintiff in this case.

19. The decision to implant a certain prosthesis is made by a physician and not by NPI or its representatives.

20. To my personal knowledge, neither I nor any NPI representative has had any direct dealings or communications with the Plaintiff in this case.

21.    I have reviewed Plaintiff's Complaint in this matter and Plaintiff has not identified what the alleged manufacturing and/or design defect in the implant is which allegedly caused Plaintiff's damages.

22.    NPI is unaware of any defect in the plaintiff's implant.

23.    NPI does not have any knowledge of any aspect of the plaintiff's implant which constitutes an unreasonably dangerous condition.

24.    At no time will NPI employees distribute a product if NPI has knowledge that there is any manufacturing and/or design defect or any unreasonably dangerous conditions.

25.    NPI was not aware of any manufacturing and/or design defects or unreasonably dangerous conditions in the subject implant at the time of distribution.

FURTHER DECLARANT SAYETH NOT

Dated: August _5_, 2014

I declare under penalties of perjury as set forth in 28 U.S.C. 1746 that the statements set forth herein are true and correct except as to those matters stated on information and belief, and as to such matters, I verily believe the same to be true.

Wally Perkins

4

# Exhibit E

IN THE CIRCUIT COURT OF COOK COUNTY – LAW DIVISION
STATE OF ILLINOIS

GERALD POPEK,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )
                                       )
SMITH & NEPHEW, INC., and              )        CASE NO. 2014-L-007075
NEUBAUER-PERKINS, INC.,                )
                                       )
                    Defendants.        )

## NOTICE OF FILING - NOTICE OF REMOVAL

TO:     Clerk of the Circuit Court of Cook County, Illinois
        Richard J. Daley Center
        50 W. Washington Street
        Chicago, IL 60602

Please take notice that on August 6, 2014 the above-captioned case was removed from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois. A copy of defendant Smith & Nephew, Inc.'s Notice of Removal is attached hereto and served upon you herewith.

Respectfully submitted,

**SMITH & NEPHEW, INC.**

By: Anthony J. Monaco
    One of its attorneys

Anthony J. Monaco, ARDC #6279545
Brittany L. Kaspar, ARDC #6313195
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 – fax
amonaco@smbtrials.com
bkaspar@smbtrials.com
Firm No. 29558